# CARL E. BRASE v. WILLIAMS SANATORIUM, INC. AND ANOTHER.[1]

August 3, 1934.

No. 29,982.

*Daggett & Redlund* and *Charles Spillane,* for appellants.
*Gallagher, Madden & Gallagher,* for respondent.

[1]Reported in 256 N. W. 176.

*LORING, Justice.*

Appeal from an order of the district court of Waseca county denying defendants' motion for judgment notwithstanding the verdict or a new trial.

The Williams Sanatorium, Inc. is a hospital at Hudson, Wisconsin, operated by and for the profit of Boyd Williams, a physician. November 14, 1932, Arthur Brase entered the hospital of the defendant for the purpose of being treated for a small cancer upon his lip. During the afternoon of that day Dr. Williams treated the cancer. The treatment was painless, and Brase apparently suffered no ill effects therefrom, although he remained at the hospital. He was up and about during the evening of November 14 and the following day and appeared to be in normal health. Sometime between 11 and 12 p. m. on the evening of November 15, however, Brase was found partly dressed attempting to get out onto a porch of the hospital. The nurse who apprehended him testified that he was slightly delirious but that she had little difficulty in persuading him to return to his bed. He talked irrationally and made several attempts to rise from his bed but was restrained by two nurses. Shortly after his return to bed he became highly excited, and the two nurses testified that it was necessary for them to apply restraints in order to keep him in bed. Dr. Williams was not at the hospital, having gone to Minneapolis during the early part of the afternoon, but about one a. m. on the morning of November 16 he was informed by telephone of the patient's condition. He advised the nurses to use restraints, although this had already been done, and also instructed them to administer a hypodermic of strychnine. The restraints placed on Brase consisted of heavy ticking which was placed across his knees; the ankles were fastened to the foot of the bed and the arms strapped to the sides of the bed, one of them being fastened by a handcuff. One hypodermic of strychnine was given Brase soon after one o'clock, but his delirious condition continued. Another hypodermic was given him a short time before he died. He fought strenuously to free himself of the restraints until about four o'clock on the morning of the 16th, when his struggles ceased, and at about six o'clock he died. The cause of death is in dispute.

At the time Brase entered the hospital he was given a physical examination by Dr. Williams, who testified that Brase was in good health. His doctor at Waseca had examined him shortly before and came to the same conclusion. An autopsy showed the vital organs of the body to be normal, with the exception of the lungs, which were congested.

■ Of necessity the testimony as to the cause of death was that of experts. Two doctors testified that death was caused by exhaustion due to overexertion as evidenced by the congested condition of the lungs; that in cases of patients in an excitable or delirious condition the administration of strychnine, a stimulant, was improper and that a sedative should have been administered. The defendant Williams testified that the use of the restraints was not improper in such a case and that the cause of death was not exhaustion. He was corroborated in this by another physician. The jury might well have found that the delirium and excitability of the patient, aggravated by the improper administration of strychnine, caused the patient to exhaust himself in his struggles against the bonds which held him to the bed. The evidence was sufficient to sustain a finding that the treatment administered was not proper practice and caused Brase's death.

■ Appellant assigns error on the admission of testimony showing that Dr. Williams had been convicted of practicing medicine without a license in the state of Minnesota and that, since violation of 1 Mason Minn. St. 1927, § 5714, is not a felony, a conviction thereunder is not admissible as affecting the weight of defendant's testimony. Practicing medicine without a license is made a gross misdemeanor under § 5714. 2 Mason Minn. St. 1927, § 9948, makes the conviction of a *crime* admissible for the purpose of affecting the weight of a witness's testimony. A gross misdemeanor being a crime, the evidence was admissible. See Thompson v. Bankers Mut. Cas. Ins. Co. 128 Minn. 474, 151 N. W. 180, Ann. Cas. 1916A, 277.

■ Appellant contends that testimony with reference to the restraints used on Brase was inadmissible under the pleadings. The complaint alleged Brase's death was "due to and caused solely by the careless and negligent treatment of said defendants." The

testimony in question was properly received under this general charge of negligence.

■ It is contended that the court erred in admitting testimony of the two doctors in plaintiff's behalf as to the cause of Brase's death because they had not examined the deceased's skull or brain. Both doctors had examined the decedent's vital organs other than his brain and found evidence of the cause of death in the lungs. On the record they were quite competent to express an opinion as to the cause of death. There was no evidence whatever to support the many speculations of defendant Williams and his witnesses as to the possibility of death from other causes.

Affirmed.